# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
Key West Division

CASE NO.:

GERTRUDE MILLIEN,

       Plaintiff, on Behalf of a Putative Class,

vs.                                                                              **CLASS ACTION**

KEY WEST HMA, LLC,
d/b/a Lower Keys Medical Center,
a Florida for-profit corporation,

       Defendant.
_____/

## <u>COMPLAINT</u>

Gertrude Millien ("Plaintiff"), individually and on behalf of similarly situated patients and former patients (collectively, the "putative Class," or the "Class") of Lower Keys Medical Center (the "Hospital"), sues Defendant, Key West HMA, LLC, as owner and operator of the Hospital, for declaratory judgment, injunctive relief, and money damages, including statutory and punitive damages, stemming from Defendant's violation of the Florida Consumer Collection Practices Act and Florida Deceptive and Unfair Trade Practices Act, and states:

## I. PARTIES, JURISDICTION, AND VENUE

1.      Defendant owns, and exercises exclusive authority and control over, the Hospital.

2.      Defendant is, and at all material times was, a corporation organized and existing under the laws of Florida.

3.      Defendant's headquarters and principal place of business are in Key West, Florida, in Monroe County and within the Southern District of Florida.

4. Defendant is a citizen of Florida for purposes of 28 U.S.C. § 1332(a).

5. Plaintiff is a United States citizen who resides in Las Vegas, Nevada.

6. Plaintiff is a citizen of Nevada for purposes of 28 U.S.C. § 1332(a).

7. The Class members are citizens of the various United States.

8. A Class aggregate of greater than $5,000,000, exclusive of costs, fees, and interest, is in controversy.

9. The acts and omissions giving rise to this action occurred in Monroe County, in the Southern District of Florida.

10. This United States District Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because:

    a. A Class aggregate of greater than $5,000,000, exclusive of costs, fees, and interest, is in controversy; and

    b. At least one Class member is a citizen of a state different than that of which Defendant is a citizen.

11. Venue is proper in the Southern District of Florida because:

    a. The sole Defendant resides in the Southern District. 28 U.S.C. § 1391(b)(1); and

    b. A substantial part of the events or omissions giving rise to Plaintiff's and the Class' claims occurred in the Southern District. 28 U.S.C. § 1391(b)(2).

## II. FACTUAL ALLEGATIONS PERTAINING TO PLAINTIFF GERTRUDE MILLIEN

12. Plaintiff incorporates by reference Paragraphs 1-11 as though fully set forth herein.

13. Plaintiff sustained injuries when she was rear-ended by another car while driving in Key West in May of 2015.

14. She subsequently received treatment for her injuries at the Hospital and incurred

four medical bills, which totaled $14,146.50; $374.27; $1,179.35; and $2,024.16.

15.     As to those bills, Plaintiff's personal injury protection ("PIP") insurer paid the hospital $7,687.90; $73.02; $217.73; and $385.62, respectively.

16.     The amounts in Paragraph 15 represent roughly 80 percent of the amount reimbursable by the PIP insurer under Florida law (the "statutorily allowed amount")[1], which amount is determined by applying the Medicare fee schedule to the medical services comprising each bill. *See* Fla. Stat. § 627.736(5) (2012).

17.     Pursuant to Fla. Stat. § 627.736(5) (2012), if a Florida PIP insurer reimburses a medical service provider for less than 100 percent[2] of the statutorily allowed amount of the PIP insured's medical expenses, the medical service provider may bill the insured only for the percentage of the *statutorily allowed amount* that the PIP insurer did not pay—not for that percentage of the *entire gross medical bill*.[3]

18.     After Plaintiff's PIP insurer paid approximately 80 percent of the statutorily allowed amount, instead of billing Plaintiff for the remaining approximately 20 percent of the statutorily allowed amount, Defendant billed Plaintiff for approximately 20 percent of the entire gross medical bill.

19.     Approximately 20 percent of the gross medical bill—the amount Defendant has

---

[1] The statutorily allowed amounts were $9,609.88; $91.28; $272.16; and $482.03, respectively. The figures in Paragraph 15 are close to—but, due to billing adjustments, not exactly—80 percent of those statutorily allowed amounts.

[2] PIP insurers almost invariably pay 80 percent of the statutorily allowed amount, as 80 percent is the minimum it must pay under Fla. Stat. § 627.736(5) (2012).

[3] I.e., if the PIP insurer paid 80 percent of the statutorily allowed amount, the medical services provider could legally bill the insured only for the unpaid 20 percent *of the statutorily allowed amount*, not for 20 percent of the *entire gross medical bill.*

attempted to collect from Plaintiff—greatly exceeds the amount the Hospital could bill without violating the law.

20.     In Plaintiff's case, Defendant knew it could legally bill and attempt to collect only the remaining approximately 20 percent of the statutorily allowed amount that the PIP insurer did not pay.

21.     Defendant nonetheless billed Plaintiff for, and has attempted and continues to attempt to collect, approximately 20 percent of the entire gross medical bill.

22.     Utilizing letters and invoices, the hospital has demanded that Plaintiff pay it $5,823.38, far in excess of the $2,091.08 it could legally recoup.

23.     Knowing the proclaimed debt to be illegitimate, Defendant has threatened to and attempted to enforce that debt.

24.     Knowing the legal right to collect the proclaimed debt does not exist, Defendant has nonetheless asserted to Plaintiff the existence of that putative legal right.

25.     Defendant's attempts to enforce this illegitimate debt have been frequent, persistent, and intentional.

26.     Defendant's noncompliance with Fla. Stat. § 559.72 as to Plaintiff has been sufficiently frequent and persistent as to evince a wanton and reckless disregard for Plaintiff's rights.

27.     The amount of money Plaintiff owes Defendant bears on the rights, status, and equitable and legal relations of the parties.

28.     Defendant's attempts to enforce the putative debt, if continued, could cause irreparable harm to Plaintiff, including, but not limited to, damage to Plaintiff's perceived creditworthiness.

29.     Such harm would cease or be lessened by a court order (1) enjoining the Hospital from persisting in this practice as to Plaintiff and (2) declaring the true amount owed by Plaintiff to Defendant.

### III. FACTUAL ALLEGATIONS PERTAINING TO ENTIRE CLASS

30.     Plaintiff incorporates by reference Paragraphs 1-11, 16, and 17 as though fully set forth herein.

31.     Each Class member is a PIP insured who was treated at the Hospital in question for injuries as a result of a motor vehicle accident.

32.     Each Class member's PIP insurer reimbursed the Hospital for some, but not all, of the statutorily allowed amount for medical services administered to the Class member.

33.     After each Class member's PIP insurer paid a portion of the statutorily allowed amount, instead of billing the Class member for the remaining percentage of the statutorily allowed amount, Defendant billed the Class member for that percentage of the entire gross medical bill.

34.     Defendant knew it could legally bill and attempt to collect from each Class member only the percentage of the statutorily allowed amount that the PIP insurer did not pay.

35.     Defendant nonetheless billed, and has attempted and continues to attempt to collect, that percentage of the entire gross medical bill.

36.     Defendant has demanded that each Class member pay it far in excess of what it can legally recoup.

37.     Knowing the proclaimed debt to be illegitimate, Defendant has threatened to and attempted to enforce the illegitimate debt against all Class members.

38.     Knowing the legal right to collect the proclaimed debt does not exist, Defendant has nonetheless asserted to each Class member the existence of that putative legal right.

39.     As to each Class member, Defendant's attempts to enforce the illegitimate debt have been frequent, persistent, and intentional.

40.     Some Class members paid the fraudulent bills to a point that exceeds the maximum they could be charged under the law.

41.     The amount of money, if any, that each Class member actually owes Defendant stemming from their hospitalization is significant to the rights, status, and equitable and legal relations of the parties.

42.     Defendant's noncompliance with Fla. Stat. § 559.72 as to each Class member has been sufficiently frequent and persistent as to evince a wanton and reckless disregard for the rights of those consumers.

43.     Defendant's attempts to enforce the fraudulent debt, if continued, could cause irreparable harm to the creditworthiness of each Class member with an unpaid balance.

44.     Such harm would cease or be lessened by a court order (1) enjoining the Hospital from persisting in this practice against the Class members and (2) declaring the true amount owed, if any, by each Class member to Defendant.

## IV. CLASS CLAIMS

### COUNT I: VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT, SECTION 559.55 *ET SEQ.*, FLORIDA STATUTES

45.     Plaintiff incorporates by reference Paragraphs 1-11, 16, 17, and 31-44 as though fully set forth herein.

46.     The money, if any, that each Class member owes Defendant constitutes a "debt" or "consumer debt" for purposes of Fla. Stat. § 559.55(6).

47.     Defendant and persons acting under the direction of Defendant have, in violation

of Fla. Stat. § 559.72, frequently, persistently, and intentionally claimed, attempted, and threatened to enforce a debt putatively owed by each Class member—and frequently, persistently, and intentionally asserted the existence of a legal right to same—while knowing the putative debts to be illegitimate.

### *Money Damages*

48.     As a result of those violations, Defendant is liable for "statutory damages of up to $1,000 for each named plaintiff and an aggregate award of additional statutory damages up to the lesser of $500,000 or 1 percent of the defendant's net worth for all remaining class members." Fla. Stat. § 559.77(2).

### *Punitive Damages*

49.     As a result of the extreme frequency, persistence, recklessness, and wantonness of Defendant's noncompliance with Fla. Stat. § 559.72, Defendant is liable to the Class for punitive damages, as explicitly provided for by Fla. Stat. § 559.77(2), in an amount to be determined by the trier of fact and bounded only by Defendant's due process rights.

### *Declaratory Judgment*

50.     This Court possesses the jurisdiction and authority to declare the rights, status, and other equitable or legal relations of the parties, whether or not further relief is or could be claimed, and to render declaratory judgment on the existence or nonexistence of any right, power, privilege, or immunity. 28 U.S.C. § 2201(a).

51.     Accordingly, the Court is vested with the power to declare, and should declare, the amount of money, if any, owed by each Class member to Defendant.

52.     The Court likewise is vested with the power to declare, and should declare, that Defendant's herein described actions violate the Florida Consumer Collection Practices Act, Fla.

Stat. § 559.55 *et seq.*

## COUNT II: VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, SECTION 501.201 *ET SEQ.*, FLORIDA STATUTES

53.     Plaintiff incorporates by reference Paragraphs 1-11, 16, 17, 31-44, 46, and 47 as though fully set forth herein.

54.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*, is designed to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

55.     At all material times:

a.      Each Class member was a consumer. *See* Fla. Stat. § 501.203(7);

b.      The Hospital was a merchant engaged in the provision of services; and

c.      The Hospital engaged in commerce by providing services to each Class member in exchange for the promise of payment. *See* Fla. Stat. § 501.203(8).

56.     A provider of services violates and is deemed liable under the FDUTPA by, *inter alia,* violating "any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c).

57.     Defendant's violation of Section 559.72 *et seq.*, the Florida Consumer Collection Practices Act —a law that proscribes unfair, deceptive, or unconscionable acts or practices—thus constitutes a *per se* violation of the FDUTPA.

### *Money Damages*

58.     As a direct and proximate result of the Defendant's deceptive and unfair trade

practice, some Class members paid the fraudulent bills in excess of the maximum they could be charged under the law.

59.    Defendant's practices thus directly and proximately caused those Class members actual damages in the amount paid that is greater than what could legally be billed and collected, for which damages Defendant is liable. Fla. Stat. § 501.211(2).

60.    Additionally, as a direct and proximate result of Defendant's practices, every Class member has incurred and/or will incur attorneys' fees and costs in pursuing their claims for money damages, injunctive relief, and/or declaratory judgment.

61.    Defendant's violation of the FDUTPA entitles every Class member to reasonable attorneys' fees and costs incurred in pursuing declaratory relief and an injunction, and, as to those class members who incurred money damages, reasonable attorneys' fees and costs incurred in pursuing money damages. Fla. Stat. § 501.211(2).

### *Injunctive Relief*

62.    "Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of [the FDUTPA] may bring an action to…enjoin a person who has violated, is violating, or is otherwise likely to violate" the statute. Fla. Stat. § 501.211(1).

63.    Defendant has violated, and is substantially likely to continue to violate, the FDUTPA by asserting claim to an illegitimate debt against each Class member, unless and until this court enters an order enjoining that practice.

64.    Fla. Stat. § 501.211(1) entitles the Class, which has no adequate remedy at law, to said injunction.

### *Declaratory Judgment*

65.     Additionally, this Court possesses the jurisdiction and authority to declare rights, status, and other equitable or legal relations, whether or not further relief is or could be claimed, and to render declaratory judgment on the existence or nonexistence of any right, power, privilege, or immunity. 28 U.S.C. § 2201(a).

66.     The FDUTPA incorporates that right into the consumer protection statute, providing that "[a]nyone aggrieved by a violation of [the FDUTPA] may bring an action to obtain a declaratory judgment that an act or practice violates" the statute. Fla. Stat. § 501.211(1).

67.     Accordingly, the Court is vested with the power to declare, and should declare, that Defendant's attempt to collect an illegitimate debt from the Class is a deceptive and unfair trade practice in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*

## V. CLASS ACTION ALLEGATIONS

68.     Plaintiff incorporates by reference Paragraphs 1 through 44 as though fully set forth herein.

69.     The Florida Legislature explicitly provided for violations of Fla. Stat. § 559.72 to be remedied via class action. *See* Fla. Stat. § 559.77(2).

70.     Plaintiff seeks to represent the following <u>Class</u>:

> All United States citizens who have been billed by the Hospital for medical services that are required personal injury protection benefits under Section 627.736(1), Florida Statutes (2012), and against whom the Hospital has attempted to enforce a debt for such services exceeding the maximum amount allowed to be charged by the Hospital in accordance with Section 627.736(5), Florida Statutes (2012).

71.     Included within this Class is a <u>Sub-Class</u>:

> All members of the Class who have paid the asserted debt in an amount exceeding the amount the Hospital is allowed to bill the Class member

under Section 627.736, Florida Statutes (2012).

72.     Excluded from the class are Defendant and Defendant's directors, officers, legal representatives, heirs, successors or assigns, and any entity in which Defendant has a controlling interest, as well as counsel for Plaintiff and their immediate family members.

73.     Plaintiff estimates that the Class contains more than 5,000 people.

74.     The rights of each member of the Class has been violated in a manner substantially identical to the manner in which Plaintiff's rights were violated:

    a.   The Class member, a PIP insured, incurred costs for medical services provided by the Hospital related to a motor vehicle accident;

    b.   The Class member's PIP insurer reimbursed the Hospital for approximately 80 percent of the amount for which the Hospital is allowed, per statute, to bill the Class member;

    c.   Instead of billing the Class member for the approximately 20 percent of the statutorily allowed amount that was not paid by the PIP insurer, the Hospital billed the member for a far greater amount: Approximately 20 percent of the entire gross medical bill; and

    d.   The Class member received correspondence from the Hospital in which the Hospital asserted a legal right to collect these debts, which the Hospital knew to be illegitimate.

75.     The members of the Sub-Class differ from the members of the Class only in that they have paid a portion of the illegitimate debt and are entitled to money damages in addition to the remedies to which the entire Class is entitled.

**PREREQUISITES FOR CLASS REPRESENTATION (FED. R. CIV. P. 23(a))**

76.     Certifying and maintaining this cause as a class action is both appropriate and necessary given the nature of the claims and in light of the following factors:

a.  **The members of the class are so numerous that separate joinder of each member is impracticable (Fed. R. Civ. P. 23(a)(1): Numerosity).** The undersigned estimates that the Class includes more than 5,000 individuals. Five thousand separate and nearly identical lawsuits in Monroe County would constitute an immense and unnecessary disruption of the working of the Court and lead to inconsistent, and in many cases unjust, results for claimants.

b.  **The claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class (Fed. R. Civ. P. 23(a)(2): Commonality).** All Class members' rights were violated by the same scheme. The Class members' claims may differ as to the amount of damages, but the damages amounts are easily calculable by plugging each member's raw numbers into the same formula and applying a percentage depending upon the PIP reimbursement. As such, the damages factor militates toward, rather than against, class certification. Questions of law and fact commonly determinative of all members' claims include:

  i.   Whether the Class members are consumers of services under the FDUTPA;

  ii.  Whether Defendant was engaged in a business enterprise by providing medical services;

  iii. How Defendant's billing regime works;

  iv.  Pre-mailing approval process of Defendant's bills;

  v.   Whether the uniform assertion by Defendant to each Class member of the

existence of debts constitutes assertion of a legal right under the operative statute;

vi. Whether Defendant's misconstruction of the PIP statute was intentional or accidental;

vii. Whether Defendant's actions stemming from said misconstruction constitute an attempt to collect a debt under Florida law;

viii. Defendant's liability for attorneys' fees under the prevailing party standard, which determination will be uniform as to all Plaintiffs;

ix. Whether Defendant's billing practices, which were uniform among all Class members, were frequent, persistent, and/or intentional enough to warrant statutory damages and/or punitive damages; and

x. Defendant's wealth, which bears on the severity of the sanction necessary to deter Defendant and other fraudulent actors from future, similar conduct.

c. **The claim or defense of the representative party is typical of the claim or defense of each member of the class (Fed. R. Civ. P. 23(a)(3): Typicality).** Each Class member's claim is dependent upon the court's determination of the factors in Paragraph 76.b. The effect of the Court's and/or jury's determination of those factors will be substantially the same for Plaintiff as it will for every other member of the Class, as each Class member was sent a nearly identical letter demanding payment of an illegal bill. The scheme by which Plaintiff's rights were allegedly violated is typical of (because it is substantially identical to) the scheme by which every Class member's rights were violated. The formula that will be used to calculated Plaintiff's damages is typical of (because it is identical to) the formula

that will be used to calculate every Class member's damages.

d. **The representative party can fairly and adequately protect and represent the interests of each member of the class (Fed. R. Civ. P. 23(a)(4): Adequacy).** As a putative class representative, Gertrude Millien has no motive other than to seek justice on behalf of herself and other hospital patients. Ms. Millien is an honest, upstanding former member of the Key West community who would like the Hospital to change its billing practices. She has been promised nothing for her putative representation of the class and yet wishes to represent her fellow citizens. Ms. Millien does not have any special interest, and there is nothing peculiar about her claim relative to other members, that would give her any motivation to do anything with regard to this action other than be an ideal class representative. Additionally, the undersigned law firm has strong ties to the Key West community from which many of the Class members hail, is experienced in class litigation, and is committed, if so authorized by this Court, to prosecuting this matter in the best interest of the Class.

## TYPE OF CLASS ACTION (FED. R. CIV. P. 23(b))

77. Satisfaction of *either* subsection (b)(1), (b)(2), or (b)(3) of Federal Rule of Civil Procedure 23 would allow the action to proceed in class form; this action is especially conducive to class action and disposition in that it meets all three criteria:

a. **The prosecution of separate claims or defenses by or against individual members of the class would create a risk of either inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class,**

**or adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the class who are not parties to the adjudications to protect their interests (Fed. R. Civ. P. 23(b)(1)).** If one Court or jury rules that Defendant's uniform actions toward its patients was a violation of Section 559.72, and another rules that it was not, the result would be untenable. The upshot would be the Hospital being told by one Court that its actions are illegal and that it must cease them, and told by another Court that its actions are perfectly legal and that it can continue to operate in that manner. Given the nearly identical nature of the claims, under collateral estoppel and *res judicata,* the adjudications of individual members would be dispositive as to future claimants' rights, and thus these very important rights would essentially be decided in the subsequent plaintiffs' absence. Moreover, in lieu of class representation, early settlements of some cases could lessen the pool of money available to subsequent claimants, leading to an unjust result whereby an identically aggrieved plaintiff recovers nothing merely because he or she filed suit after many other plaintiffs.

b. **The party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate (Fed. R. Civ. P. 23(b)(2)).** Plaintiff, on behalf of the Class, seeks both declaratory and injunctive relief that would (1) deem the Hospital's practices illegal and (2) force the Hospital to cease same. These actions affect the entire class and are of

significant public importance, and thus should not be determined by just one of the thousands of affected potential claimants.

c. **The questions of law or fact common to class members predominate over any questions affecting only individual members and class action is superior to other available methods for fairly and adjudicating the controversy (Fed. R. Civ. P. 23(b)(3)).** The Class members' claims are sufficiently uniform and the cost of litigating this matter is sufficiently high relative to the modest potential damages for each member that individual class members do not have a reasonable interest in maintaining individual actions. *See* Fed. R. Civ. P. 23(b)(3)(A). The undersigned is unaware of any similar litigation already begun in Florida or elsewhere. *See* Fed. R. Civ. P. 23(b)(3)(B). It is desirable to concentrate the litigation of the claims in the Southern District, because a majority of the Class members are likely from the Southern District. *See* Fed. R. Civ. P. 23(b)(3)(C). There are no foreseeable difficulties specific to this action that would render it difficult to manage in class form. *See* Fed. R. Civ. P. 23(b)(3)(D).

## VI. REQUEST FOR RELIEF

Based on the foregoing, Plaintiff and each member of the Class respectfully pray for relief in the form of:

78. Judgment, as authorized by Fla. Stat. § 86.011 and Fla. Stat. § 501.211(1):

a. Declaring the amount of money, if any, owed by each Class member to Defendant;

b. Declaring that Defendant's billing of, and attempt to collect an illegitimate debt from, each Class member constitutes a violation of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.59 *et seq.;*

      c.    Declaring that Defendant's violation of Fla. Stat. § 559.59 *et seq.* as to each Class member constitutes a deceptive and unfair trade practice in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.;*

79.    An order, as authorized by Fla. Stat. § 501.211(1), enjoining Defendant from further violations, as described herein, of Fla. Stat. § 501.201 *et seq.*;

80.    Reasonable costs and attorneys' fees, as authorized by Fla. Stat. § 559.77(2) and Fla. Stat. § 501.211(2);

81.    Statutory damages of up to $1,000 for each named plaintiff and an aggregate award of additional statutory damages up to the lesser of $500,000 or 1 percent of the defendant's net worth for all remaining class members, as authorized by Fla. Stat. § 559.77(2);

82.    Money damages, as authorized by Fla. Stat. § 559.77(2) and Fla. Stat. § 501.211(1), to each qualifying Class member in the amount that the Class member's payment of fraudulent bills exceeded the maximum the Class member could be charged under the law;

83.    Punitive damages, as authorized by Fla. Stat. § 559.77(2);

84.    Interest; and

85.    Any other and further relief this Court may deem just and proper.

**Demand for Jury Trial**

Plaintiff and the Class hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

By: /s/ *Mason Kerns*

LEESFIELD SCOLARO, P.A.
*Attorneys for Plaintiff*
**THOMAS SCOLARO** (FL Bar No. 178276)
E-Mail: Scolaro@Leesfield.com
**MASON KERNS** (FL Bar No. 91754)
E-Mail: Kerns@Leesfield.com
2350 South Dixie Highway
Miami, Florida 33133
Telephone: 305-854-4900
Facsimile: 305-854-8266